*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, FLUHR, and GANNON
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Christopher J. ST. HELEN**
Midshipman, U.S. Navy
*Appellant*

**No. 202400264**

_____

Decided: 10 July 2026

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Angela J. Tang

Sentence adjudged 10 March 2022 by a general court-martial tried at the Washington Navy Yard, District of Columbia, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: confinement for 56 days.[1]

For Appellant:
*Lieutenant Commander Michael W. Wester, JAGC, USN*

---

[1] Appellant was credited with 56 days of pretrial confinement credit.

For Appellee:
*Lieutenant Commander Philip J. Corrigan, JAGC, USN*
*Commander John T. Cole, JAGC, USN*

———————————

Judge FLUHR delivered the opinion of the Court, in which Senior Judge KISOR and Judge GANNON joined.

———————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————

FLUHR, Judge:

Appellant was convicted, consistent with his pleas, of two specifications of assault consummated by a battery and one specification of simple assault with an unloaded firearm, in violation of Article 128, Uniform Code of Military Justice (UCMJ).[2] All three specifications stem from an incident in which Appellant pointed the barrel of an unloaded firearm at Seaman (SN) Hotel[3] and unlawfully touched SN Hotel's face and neck with the unloaded firearm. We have jurisdiction to review this case under Article 66(b)(1)(A), UCMJ.[4]

Appellant asserts two assignments of error (AOEs): (1) whether the military judge abused her discretion by accepting Appellant's guilty pleas without inquiring into the mental responsibility affirmative defense; and (2) whether Appellant is entitled to relief because of post-trial processing delay. We find no prejudicial error and affirm.

## I. BACKGROUND

While enrolled as a Midshipman at the Naval Academy, Appellant attended a party at the home of a friend in Norfolk, Virginia, on 17 December

---

[2] 10 U.S.C. §928.

[3] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

[4] 10 U.S.C. § 866(b)(1)(A).

2021.[5] Upset at a perceived slight in a group text thread, Appellant confronted SN Hotel, an acquaintance who had been a Midshipman at the Naval Academy, as he arrived at the party location.[6] Appellant and SN Hotel argued and then Appellant removed an unloaded firearm from behind his back, pointing the barrel of the weapon at SN Hotel's head from a short distance away.[7] Appellant also brought the unloaded firearm into contact with SN Hotel's face and neck, which resulted in a cut on SN Hotel's face.[8] After the altercation with SN Hotel ended, Appellant returned to the party and did not see SN Hotel for the remainder of that evening.[9]

The Government charged Appellant with three specifications under Article 128, UCMJ, all relating to the incident with SN Hotel on 17 December 2021. Prior to referral of the Charge, the convening authority directed that Appellant undergo an inquiry into his mental capacity and mental responsibility pursuant to Rule for Courts-Martial (R.C.M.) 706.[10] In a report dated 23 February 2022, the R.C.M. 706 board members diagnosed Appellant with the following conditions both at the time of the alleged offenses and at the time of their evaluation: "Posttraumatic Stress Disorder, Chronic"; "Suicidality, Chronic"; "Antisocial Personality Disorder"; and "Intermittent Explosive Disorder."[11] However, the R.C.M. 706 board concluded that the Appellant did not suffer from a *severe* mental disease or defect at the time of the alleged criminal conduct.[12] Moreover, the R.C.M. 706 board found that Appellant "was not unable to appreciate the nature and quality or wrongfulness of his conduct."[13] Finally, the R.C.M. 706 board found that "a mental disease or defect currently does not render [Appellant] unable to understand the nature of the proceedings against him or to conduct or cooperate intelligently in his defense."[14]

---

[5] Pros. Ex. 1, paras. 4, 8.

[6] Pros. Ex. 1, paras. 9, 10, 12.

[7] Pros. Ex. 1, paras. 11, 28.

[8] Pros. Ex. 1, paras. 11, 14, 18, 19.

[9] Pros. Ex. 1, para. 24.

[10] App. Ex. I.

[11] App. Ex. I, para. 2(b).

[12] App. Ex. I, para. 2(a) (emphasis added).

[13] App. Ex. I, para. 2(c).

[14] App. Ex. I, para. 2(d).

Also prior to referral of the Charge, the parties engaged in plea negotiations and on 28 February 2022, Appellant and his counsel signed a plea agreement.[15] That agreement specified, among other things, that Appellant agreed "to waive all motions except those that are non-waivable pursuant to R.C.M. 705(c)(1)(B) or otherwise."[16] Further, through the written plea agreement, Appellant agreed to waive his right to a preliminary hearing.[17] After executing the plea agreement submitted by Appellant and with the waiver of a preliminary hearing, the convening authority referred the Charge and Specifications 1, 2, and 3 to a general court-martial.[18] Through the plea agreement, Appellant agreed to plead guilty to the Charge and all three underlying specifications.[19]

On 10 March 2022, Appellant appeared for trial. In preparation for that hearing, Appellant signed a stipulation of fact admitting guilt to the three specifications under the Charge.[20] He acknowledged in the stipulation of fact that, as to each offense, he "acted with no legal justification or excuse."[21] Significantly for our review, Appellant also stated the following:

> At the time of the offenses to which I am pleading guilty, I did not suffer from any mental defect or disease that caused me to commit the offenses. I have not suffered from any mental defect or disease that has prevent[ed] me from knowingly, consciously, and intelligently participating in my defense and signing the pretrial agreement and this stipulation.[22]

During the providence inquiry, Appellant reiterated that, with respect to Specifications 1 and 2, he did not have any legal justification or excuse for causing the unloaded firearm to come into contact with SN Hotel's face and neck.[23] Similarly, regarding Specification 3, Appellant affirmed that he did not

---

[15] App. Ex. IV at 8.

[16] App. Ex. IV, para. 8(g).

[17] App. Ex. IV, para. 8(f).

[18] App. Ex. IV, at 8.

[19] App. Ex. IV, para. 8(a).

[20] Pros. Ex. 1; R. at 20 (admitting the stipulation of fact into evidence).

[21] Pros. Ex. 1, paras. 13, 22, 31.

[22] Pros. Ex. 1, para. 5.

[23] R. at 25.

have any legal justification or excuse for pointing an unloaded firearm at SN Hotel and that he did so as a demonstration of violence.[24]

The military judge also engaged in a colloquy with Appellant regarding the terms of the plea agreement.[25] As part of that discussion, the military judge questioned Appellant and trial defense counsel regarding the agreement "to waive all motions except those that are non-waivable pursuant to R.C.M. 705(c)(1)(B) or otherwise."[26] Trial defense counsel did not identify lack of mental responsibility as an issue when discussing potential motions being waived through the plea agreement.[27] Moreover, Appellant expressed his understanding that he was giving up the relief he could seek through those motions and that he believed that it was in his "best interest to waive [the] motions and to enter into this plea agreement."[28]

After accepting the plea agreement, the military judge found that Appellant entered his plea of guilty "voluntarily and with full knowledge of its meaning and effect" and that his guilty plea was provident.[29] As such, the military judge accepted Appellant's guilty plea and entered findings on the Charge and specifications.[30]

Next, the military judge turned to presentencing.[31] During that stage of the proceeding, Appellant introduced a character statement from Jack Smith, a medically-retired Navy officer, who was then serving as a deputy chief financial officer for a government agency.[32] In the character statement, Mr. Smith opined that Appellant "has dealt with a lot of difficulties in his upbringing and uses those past traumatic experiences to help him see it through this current situation."[33]

---

[24] R. at 31.

[25] R. at 33-56.

[26] R. at 41 (referring to App. Ex. IV, para. 8(g)).

[27] R. at 41.

[28] R. at 41-42.

[29] R. at 56-58.

[30] R. at 58.

[31] *Id.*

[32] Def. Ex. A; R. at 61 (admitting the subject character statement into evidence).

[33] Def. Ex. A, para. 6.

In addition, Appellant read an unsworn statement that included the following points: (1) "[s]ince a young age, I have dealt with mental health issues resulting from incidents of abuse in my childhood";[34] (2) that his mental health issues were exacerbated by the deaths of three people close to him while at the Naval Academy;[35] and (3) that he has "sought mental health treatment multiple times," which disrupted his progress at the Naval Academy, resulting in separation processing.[36]

Trial counsel waived argument on sentencing, while trial defense counsel made a brief argument to the military judge seeking a sentence of time served, that is, 56 days of confinement.[37] The military judge took a short recess to deliberate before she imposed a sentence of 56 days of confinement (time served) with no further punishment.[38] The adjudged sentence was consistent with the sentencing limitations of the plea agreement.[39]

At the time of Appellant's sentencing on 10 March 2022, the sentence imposed did not meet the jurisdictional requirements for direct appeal to this Court. Instead, on 10 June 2022, it was reviewed by a judge advocate pursuant to Article 65(d), UCMJ.[40] Under the statutory scheme in place at the time, Appellant then had one year to apply to the Judge Advocate General of the Navy for further review pursuant to Article 69(a), UCMJ.[41] There is no evidence in the record before us that Appellant sought such further review.

That statutory scheme changed, however, on 23 December 2022, when Congress amended Articles 66 and 69, UCMJ, 10 U.S.C. §§ 866, 869.[42] The amend-

---

[34] R. at 62.

[35] R. at 62-63.

[36] R. at 63.

[37] R. at 64-65.

[38] R. at 67.

[39] App. Ex. IV, para. 9.

[40] 10 U.S.C. § 865(d)(1)(2016) ("A review conducted under this subsection may be conducted by an attorney within the Office of the Judge Advocate General or another attorney designated under regulations prescribed by the Secretary concerned.").

[41] 10 U.S.C. § 869(a)(2016).

[42] National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. 117-263, § 544, 136 Stat. 2395, 2582-84 (23 Dec. 2022).

ment to Article 66(b)(1)(A), UCMJ, expanded the jurisdiction of Courts of Criminal Appeals to include any judgment of a special or general court-martial, irrespective of sentence, that includes a finding of guilty.[43]

In the aftermath of that legislative change, this Court considered its jurisdiction over cases involving "sub-jurisdictional" sentences announced prior to the amendments to Article 66(b)(1)(A), UCMJ. On 9 April 2024, in *United States v. Hirst*, we found that so long as an appellant had not applied for relief to the Judge Advocate General of the Navy pursuant to Article 69, UCMJ, or appealed to this Court, we have jurisdiction over a general or special court-martial conviction, without regard to the sentence, even as to a conviction announced before the statutory change.[44] Furthermore, concerning implementation of this jurisdictional expansion, we emphasized the non-discretionary nature of the statutory requirement for the Judge Advocate General of the Navy to notify individuals convicted of an offense at special or general court-martial of their eligibility for direct review under Article 66(b)(1)(A), UCMJ.[45]

On 21 November 2024, the Navy and Marine Corps Appellate Review Activity transmitted a letter to Appellant advising him of his right to appeal under the amended statutory provisions discussed above.[46] On 18 February 2024, Appellant timely filed a notice of appeal[47] with this Court and we docketed his case that same day. Thereafter, Appellant moved for four enlargements of time.[48] Appellant submitted his brief with assignments of error on 1 August 2025.[49] Prior to the filing of briefs with this Court, Appellant did not request speedy appellate review. Key post-trial processing events are summarized as follows:

---

[43] 10 U.S.C. § 866(b)(1)(A).

[44] *United States v. Hirst*, 84 M.J. 615, 625 (N-M. Ct. Crim. App. 2024) (Order).

[45] *Id.* at 625 (citing 10 U.S.C. § 865(c); 10 U.S.C. § 866(b)(1)(A)).

[46] Appellant Mot. to Attach, App'x A.

[47] *See* 10 U.S.C. § 866(c)(1)(A) ("An appeal under subsection (b)(1) is timely if . . . it is filed before the . . . the end of the 90-day period beginning on the date the accused is provided notice of appellate rights . . . .").

[48] Appellant's Mot. For First Enlargement of Time, dated 16 April 2025; Appellant's Mot. For Second Enlargement of Time, dated 14 May 2025; Appellant's Mot. For Third Enlargement of Time, dated 13 June 2025; Appellant's Mot. For Fourth Enlargement of Time, dated 11 July 2025.

[49] Appellant Br. at 31.

| Date | Event |
|---|---|
| 10 March 2022 | Announcement of sentence |
| 6 April 2022 | Convening authority's action (27 days after announcement of sentence) |
| 29 April 2022 | Entry of judgment (50 days after announcement of sentence) |
| 10 June 2022 | Review completed under Article 65(d), UCMJ (92 days after announcement of sentence) |
| 23 December 2022 | Passage of the NDAA for Fiscal Year 2023 (288 days after announcement of sentence) |
| 21 November 2024 | Notice of right to appeal transmitted to Appellant (987 days after announcement of sentence) (699 days after passage of the NDAA for Fiscal Year 2023) (226 days after decision in *United States v. Hirst*) |
| 18 February 2025 | Appellant's notice of appeal filed and docketed (1,076 days after announcement of sentence) (89 days after notification of right to appeal transmitted to Appellant) |
| 1 August 2025 | Appellant's brief and assignments of error filed (1,240 days after announcement of sentence) (253 days after notification of right to appeal transmitted to Appellant) |

## II. DISCUSSION

### A. The Military Judge Did Not Abuse Her Discretion when Accepting Appellant's Guilty Plea Without Inquiring into a Possible Affirmative Defense.

#### 1. Legal Standards

Appellant asks this Court to set aside the findings and sentence because the military judge erred by accepting his guilty pleas without inquiring into the affirmative defense of lack of mental responsibility.[50] Acceptance of a guilty plea is reviewed for an abuse of discretion, and questions of law arising from the plea are reviewed de novo.[51] We look at the record as a whole to determine whether there is a substantial basis in law or fact for questioning the guilty

---

[50] Appellant Br. at 11-22.

[51] *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008).

8

plea.[52] "If an accused 'sets up matter inconsistent with the plea' at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea."[53] A "mere possibility" of a conflict is not sufficient basis to overturn the trial results.[54]

In the absence of evidence to the contrary, a military judge can presume that an accused is sane.[55] The affirmative defense of lack of mental responsibility requires the accused to prove, by clear and convincing evidence, that at the time of the offense: (1) the accused suffered from a "severe mental disease or defect"; and (2) as a result of that mental disease or defect, the accused was "unable to appreciate" either (a) the "nature and quality" of his acts or (b) the "wrongfulness" of his acts.[56] Like other affirmative defenses, the defense of lack of mental responsibility can be waived.[57]

### 2. Analysis

Appellant has failed to establish that his mental health history raises a conflict with his guilty pleas.[58] Considering the entirety of the evidence before the military judge, the facts and circumstances at most raised the "mere possibility" of a lack of mental responsibility. This is insufficient for relief.[59]

Regarding Appellant's mental responsibility, a pretrial sanity board conducted an inquiry pursuant to R.C.M. 706 and concluded that Appellant was able to appreciate the wrongfulness as well as the nature and quality of his

---

[52] *Id.*

[53] *United States v. Shaw*, 64 M.J. 462, 463 (C.A.A.F. 2007) (quoting *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996) and Article 45(a), UCMJ, 10 U.S.C. § 845(a)).

[54] *Id.* (citation omitted).

[55] *Id.* at 462; *see also* R.C.M. 916(k)(3)(A) ("[An] accused is presumed to have been mentally responsible . . . .").

[56] 10 U.S.C. § 850a; *see also* R.C.M. 916(k)(3)(A) ("[An] accused is presumed to have been mentally responsible at the time of the alleged offense[,] . . . [u]ntil the accused establishes, by clear and convincing evidence, that he [ ] was not mentally responsible at the time of the alleged offense.").

[57] *United States v. Halsema*, No. 200001337, 2006 CCA LEXIS 297, at *22 (N-M. Ct. Crim. App. 2006) (unpublished) (citing R.C.M. 905(e); *United States v. Lewis*, 34 M.J. 745, 750 (N.M.C.M.R. 1991)).

[58] *See United States v. Phillips*, 74 M.J. 20, 21-22 (C.A.A.F. 2015).

[59] *See Shaw*, 64 M.J. at 463; *see also United States v. Hayes*, 70 M.J. 454, 459-60 (C.A.A.F. 2012).

conduct.[60] The R.C.M. 706 board also concluded that Appellant was not suffering from a mental disease or defect rendering him unable to understand the nature of the proceedings against him or to conduct or cooperate intelligently in his defense.[61] Following the R.C.M. 706 board, Appellant confirmed the absence of any concern regarding his mental capacity through a stipulation of fact, representing that "[a]t the time of the offenses to which I am pleading guilty, I did not suffer from any mental defect or disease that caused me to commit the offenses" and that "I have not suffered from any mental defect or disease that has prevent[ed] me from knowingly, consciously, and intelligently participating in my defense and signing the pretrial agreement and this stipulation."[62]

Here, the record reflects that Appellant was diagnosed with posttraumatic stress disorder, suicidality, antisocial personality disorder, and intermittent explosive disorder.[63] He attributed his mental health struggles to childhood trauma exacerbated by events at the Naval Academy.[64] The R.C.M. 706 board determined that Appellant's diagnosed conditions were not severe, that he was able to appreciate the wrongfulness of his conduct, and that he was not suffering from a mental disease or defect rendering him unable to understand the nature of the proceedings.[65] There was no effort on the part of trial defense counsel to contradict these findings. In fact, Appellant's stipulation of fact admitted at trial reflected a concerted effort to assure the military judge that Appellant did not have a mental responsibility defense.

Appellant's unsworn statement asserting general references to "mental health issues" stemming from childhood abuse and aggravating events at the Naval Academy did not raise any conflict with his guilty pleas requiring clarification by the military judge. Significantly, through his stipulation of fact, Appellant disavowed the existence of a defense of lack of mental responsibility or competence to stand trial.[66] Under the circumstances, no further inquiry from the military judge was necessary to assure the providence of Appellant's guilty pleas.

---

[60] App. Ex. I, para. 2(c).

[61] App. Ex. I, para. 2(d).

[62] Pros. Ex. 1, para. 5.

[63] App. Ex. I, para. 2(b).

[64] R. at 62-63.

[65] App. Ex. I, para. 2.

[66] Pros. Ex. 1, para. 5.

Even assuming, arguendo, that Appellant's mental health issues referenced in his unsworn statement rose to the level of a severe mental disease or defect at the time of the charged offenses, there was no information in the record that this condition rendered Appellant unable to appreciate the nature and quality or the wrongfulness of his acts, as would be required to mount an affirmative defense of lack of mental responsibility. Indeed, the R.C.M. 706 board found to the contrary.[67] No further inquiry is required for a "mere possibility" of a lack of mental responsibility relating to conditions determined not to be severe.[68] Nor has Appellant to date offered any indication that his diagnosed conditions raise a substantial question regarding his mental responsibility.

Under these circumstances, to include Appellant's repudiation of any defense of lack of mental responsibility, and the findings of the R.C.M. 706 board, Appellant's matters raised in sentencing were properly considered as matters in mitigation,[69] but did not provide a "substantial basis" to undermine the validity of his guilty plea. Accordingly, we find no substantial basis in law or fact for questioning Appellant's plea and find that the military judge did not abuse her discretion in finding Appellant's plea provident.

## B. The Delay in Providing Appellant with Notice of His Right to Appeal is Facially Unreasonable, but Appellant is Not Entitled to Relief Because He Suffered No Prejudice and the Delay Does Not Otherwise Warrant Relief.

### 1. *Legal Standards*

Appellant seeks relief due to an alleged failure to timely process his case after trial.[70] In particular, he asks us to set aside the trial court's findings with prejudice or, in the alternative, to set aside Specifications 1 and 2 of the Charge

---

[67] App. Ex. I, para. 2.

[68] *See United States v. Riddle*, 67 M.J. 335, 339-40 (C.A.A.F. 2009) (citing *Shaw*, 64 M.J. at 464) (where reference to a history of bipolar disorder "at most raised only the 'mere possibility' of a conflict with the plea," and therefore, "it was not an abuse of discretion for the military judge to accept [the appellant]'s plea without conducting further inquiry into his mental health").

[69] Appellant himself seems to acknowledge this, noting that his mental health struggles "do not justify Appellant's behavior but rather provide context into his state of mind around the relevant time." Appellant Br. at 29.

[70] Appellant Br. at 22-30.

because those "specifications effectively exaggerate Appellant's criminality."[71] We review Appellant's claim to relief for post-trial delay de novo.[72]

In *United States v. Moreno*, our superior court identified thresholds for facially unreasonable delay during three stages of the post-trial and appellate process.[73] Specifically, our superior court established a presumption of facially unreasonable delay where: (1) the convening authority did not take action within 120 days of the completion of trial; (2) the record was not docketed with the court of criminal appeals within 30 days of the convening authority's action; or (3) the court of criminal appeals did not render a decision within 18 months of docketing.[74] Following statutory and regulatory changes, we determined in *United States v. Rivera* that the first two *Moreno* deadlines were superseded and we held that we would only test for prejudice relating to post-trial processing delay when the time between announcement of sentence and docketing with this Court exceeds 150 days.[75]

However, in light of further amendments to Article 66, UCMJ, which expanded this Court's jurisdiction to include any judgment of a special or general court-martial that includes a finding of guilty regardless of sentence, we find that the aggregated 150-day threshold announced in *Rivera* is not workable for direct appeals of sentences that were deemed "sub-jurisdictional" under the earlier statutory regime. As our sister court, the Air Force Court of Criminal Appeals, has observed, "[t]hese statutory changes substantially altered the sequence of post-trial events in such [direct appeal] cases" as compared to the mandatory review cases our superior court contemplated in *Moreno*.[76] Indeed, under the new procedures for direct appeals under Article 66(b)(1)(A), UCMJ, "an appellant is now in the driver's seat" regarding both whether appellate review occurs and the timing of any such review.[77] Therefore, like the Air Force Court of Criminal Appeals, we too decline to establish a new specific timeframe for a facially unreasonable delay between announcement of sentence and dock-

---

[71] Appellant Br. at 30.

[72] *United States v. Anderson*, 82 M.J. 82, 85 (C.A.A.F. 2022) (citing *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006)).

[73] *Moreno*, 63 M.J. at 141-43 (citations and footnotes omitted).

[74] *Id.* at 142.

[75] *United States v. Rivera*, 81 M.J. 741, 746 (N-M. Ct. Crim. App. 2021).

[76] *United States v. Boren*, No. ACM 40296 (f rev), 2025 CCA LEXIS 103, at *47 (A.F. Ct. Crim. App. 19 Mar. 2025) (unpublished).

[77] *Id.* at *47-48.

eting with this Court direct appeal cases under Article 66(b)(1)(A), UCMJ. Instead, we will assess each case of this nature under its own specific facts and circumstances to determine whether an appellant has demonstrated that there has been a due process violation.

Our analysis of whether post-trial delay constitutes a due process violation is guided by the four factors announced by the Supreme Court in *Barker v. Wingo*: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]."[78] "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding."[79]

In *Barker*, the Supreme Court also identified three types of cognizable prejudice for purposes of an appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) "particularized" anxiety and concern "that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;" and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing.[80] "Of those, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."[81] In addition, where an appellant has not shown prejudice from the delay, we cannot find a due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system."[82]

*2. Analysis*

In total, 1076 days elapsed between the military judge's announcement of sentence and the docketing of Appellant's case with this Court. The first 288 days occurred before Congress passed the National Defense Authorization Act for Fiscal Year 2023 expanding our jurisdiction under Article 66(b)(1)(A), UCMJ, to encompass formerly "sub-jurisdictional" sentences like the one announced in Appellant's case. After that statutory change, it took another 699 days for the Government to notify Appellant of his right to appeal his conviction. Of that 699-day period, 226 days elapsed after the issuance of our opinion

---

[78] *Moreno*, 63 M.J. at 135 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

[79] *Id.*, 63 M.J. at 136 (citing *Barker*, 407 U.S. at 533).

[80] *Id.* at 138-40 (citations and footnotes omitted).

[81] *Barker*, 407 U.S. at 532.

[82] *Anderson*, 82 M.J. at 87-88 (citing *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006)).

in *United States v. Hirst*, in which we confirmed that the Judge Advocate General of the Navy must notify individuals convicted of an offense at special or general court-martial of their eligibility for direct review under Article 66(b)(1)(A), UCMJ.[83] The last 89 days of the overall 1076-day sentence-to-docketing period is comprised of the time between the notice of right to appeal and Appellant's filing of his notice of appeal with this Court.

Appellant contends that the Government was neglectful, resulting "in considerable delays to Appellant's post-trial processing."[84] More specifically, Appellant argues that while the record of trial in this case "is very small" and the case is "relatively non-complex," the Government nevertheless took "more than two-and-a-half years—937 days—to inform Appellant of his right to appeal the findings and sentence of his court-martial."[85] In his reply, Appellant narrows his focus further, pointing to the 699 days it took the Government to notify him of his right to appeal after the passage of the National Defense Authorization Act for Fiscal Year 2023.[86]

The Government argues in response that the "pre-docketing delay was not facially unreasonable" because even after the statutory expansion of appellate jurisdiction, its obligation "to identify affected cases and issue notices" regarding appellate rights only "crystallized" after our *Hirst* decision in April 2024.[87] The Government characterizes this retroactive review process as a "considerable undertaking."[88]

As we noted in *Hirst*, Article 65(c), UCMJ, as amended by the National Defense Authorization Act for Fiscal Year 2023, "affords the JAG no discretion to withhold a notice of right to appeal" in cases subject to direct appeal under Article 66(b)(1)(A), UCMJ.[89] Moreover, providing individuals with notice of the right to make a direct appeal under Article 66(b)(1)(A), UCMJ, "is a 'ministerial

---

[83] *Hirst*, 84 M.J. at 626 (citing 10 U.S.C. §§ 865(c), 866(b)(1)(A)).

[84] Appellant Br. at 26.

[85] *Id.* In calculating this 937-day period, Appellant used the date of the entry of judgment (29 April 2022) as the commencement date, rather than the earlier date of the announcement of sentence (10 March 2022).

[86] Appellant Reply Br. at 6-9.

[87] Gov't Answer at 30.

[88] *Id.*; *see also id.* at 33 (Government noting that it "necessarily had to review records of previously-ineligible cases to determine if they were now eligible for review.").

[89] *Hirst*, 84 M.J. at 626 (citing 10 U.S.C. § 865(c) 10 U.S.C. § 866(b)(1)(A)).

act, routinely accomplished in a brief period of time in the absence of special circumstances.'"[90]

Here, the Government did not notify Appellant of his right to appeal until 11 November 2024, which was 226 days after this Court made clear in *Hirst* that appellants who met certain criteria were eligible for direct appeal with this Court and were required to receive appropriate notification.[91] We find that the 226-day delay between this Court's decision in *Hirst* and the Government's notice to Appellant of his right to appeal is excessive.[92] Under these circumstances, Appellant has demonstrated a facially unreasonable delay in the post-trial processing of his case.

We turn then to the remaining *Barker* factors. Regarding reasons for the delay, the Government seeks to excuse its notification delay by referring to its review of cases potentially subject to the expanded jurisdiction of Article 66(b)(1), UCMJ, as a "considerable undertaking."[93] This self-serving characterization is not supported by any meaningful insight as to what made the review a considerable undertaking or, more importantly, why it took so long. When did the review begin? How many cases were subject to the review? How many people were involved in conducting the review? Neither the record nor the Government's Answer provides us with any useful information. Absent a more fulsome articulation of the basis for the Government's delay, we must conclude that the nature of the undertaking did not justify a delay of 226 days.

Next, concerning assertion of the right to timely review and appeal, Appellant filed his notice to appeal in a timely manner (i.e., within 90 days) after receiving notice of his right to appeal. He did not, however, demand speedy appellate review. Rather, through counsel, Appellant sought four requests for enlargement of time to file his brief. Under these circumstances, we conclude that this factor weighs against Appellant, but this weight is slight.[94]

---

[90] *Id.* (citing *United States v. Simon*, 64 M.J. 205, 207 (C.A.A.F. 2006)).

[91] The Court focuses on the timeframe after *Hirst*. Because of the uncertainty that existed prior to that decision, the Court excuses the 473-day period between the passage of the National Defense Authorization Act for Fiscal Year 2023 and the Government's notice to Appellant of his right to appeal under the amended statute.

[92] While this delay is excessive, we have no indication of gross indifference or institutional neglect on the part of the Government in processing Appellant's case.

[93] Gov't Answer at 30.

[94] *See Moreno*, 63 M.J. at 138 ("While this factor weighs against Moreno, the weight against him is slight given that the primary responsibility for speedy processing rests

As to the fourth *Barker* factor, we do not find Appellant suffered any prejudice. Appellant's claim of prejudice is that he has carried the weight of a "faulty conviction" while his post-trial processing was undertaken.[95] Appellant did not develop any argument as to precisely how his conviction—involving a guilty plea and a time served sentence—was somehow "faulty."[96] Regardless of that omission, Appellant is not subject to oppressive incarceration because he received a time served sentence of 56 days and completed his confinement on the date the military judge announced his sentence—more than nine months prior to the legislative change allowing direct appeals in cases like his.

Furthermore, Appellant has not alleged particularized anxiety or impairment related to the delay in notification of his new right to a direct appeal. In addition, Appellant "does not claim any specific prejudice to his appeal" stemming from the delay.[97] In any event, any claim of prejudice would be diminished by Appellant having sought four requests for enlargement of time to file his brief.

Finally, absent a finding of prejudice to Appellant under the fourth *Barker* factor, Appellant is not entitled to relief for a due process violation because we find that the delay was not so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system."[98] While we do not endorse or condone the Government's unsubstantiated delay in providing Appellant with notice of his right to appeal, "we find it difficult to imagine these circumstances causing the public to doubt the entire military justice system's fairness and integrity."[99]

---

with the Government and those to whom he could complain were the ones responsible for the delay.").

[95] Appellant Br. at 27.

[96] Presumably, Appellant's claim to a faulty conviction would relate to his other assignment of error regarding a potential defense of lack of mental responsibility. However, as discussed in the preceding section, we determined that Appellant's argument regarding his guilty plea lacks merit.

[97] Appellant Br. at 26; Appellant Reply Br. at 8-9.

[98] *Toohey*, 63 M.J. at 362.

[99] *Anderson*, 82 M.J. at 88. In addition, we recognize that even in the absence of a due process violation, we still have authority under Article 66(d)(2), UCMJ, to consider whether to grant relief for excessive post-trial delay. We have carefully considered Appellant's argument that under the totality of the circumstances, "there is no reasonable explanation" for the Government's delay in notifying him "of his right to appeal a relatively simple guilty plea such as this." Appellant Br. at 27. While we have found that

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[100]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

the Government's delay in providing Appellant with notice of his right to appeal to be excessive, we nevertheless conclude that there is no appropriate relief available under Article 66(d)(2), UCMJ, because Appellant was sentenced to a time served sentence of 56 days confinement with no further punishment, which we find to be an appropriate sentence for pointing an unloaded firearm at a fellow member of the Navy as a demonstration of violence and by causing the firearm to come into contact with the other individual's face and neck. We decline to set aside this sentence or modify the findings of the military judge.

[100] Articles 59 & 66, UCMJ, 10 U.S.C. §§ 859, 866.